# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**ANGIE Y. McGEE**
        **Plaintiff,**

    v.                                    Case No. 10-C-0365

**MICHAEL J. ASTRUE,**
**Commissioner of the Social Security Administration**
        **Defendant.**

## DECISION AND ORDER

In denying plaintiff Angie McGee's application for social security disability benefits, the administrative law judge ("ALJ") in this case violated the legal requirements for evaluating credibility and determining residual functional capacity ("RFC"). See Punzio v. Astrue, No. 09-3064, 2011 WL 183976 (7th Cir. Jan. 21, 2011); Martinez v. Astrue, Nos. 10-1957, 10-2603, 10-2080, 2011 WL 148810 (7th Cir. Jan. 19, 2011); Spiva v. Astrue, No. 10-2083, 2010 WL 4923563 (7th Cir. Dec. 6, 2010); O'Connor-Spinner v. Astrue, 627 F.3d 614 (7th Cir. 2010); Parker v. Astrue, 597 F.3d 920 (7th Cir. 2010); Moss v. Astrue, 555 F.3d 556, 561 (7th Cir. 2009). The matter must therefore be remanded for further proceedings pursuant to 42 U.S.C. § 405(g), sentence four.

**I.**

The ALJ determined that plaintiff suffered from several severe impairments, including arthritis, obesity, migraines, high blood pressure, fibromyalgia, bipolar disorder, and depression, none of which qualified as presumptively disabling under SSA regulations. (Tr. at 13-14.) The ALJ then determined that plaintiff retained the RFC for simple, low stress, routine,

repetitive, sedentary work, with a sit/stand option, occasional handling and fingering, occasional changes in the work-setting and decision making, occasional interaction with the public and co-workers, and no production or pace work and no tandem tasks. (Tr. at 15.) In making this finding, the ALJ considered plaintiff's testimony, finding that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the existing medical evidence." (Tr. at 16.) He then reviewed some of the medical evidence, noting that the "minimal objective findings simply do not support [plaintiff's] reports of such disabling symptoms." (Tr. at 16.) Based on this RFC, and relying on a vocational expert's testimony, the ALJ determined that jobs plaintiff could do existed in the national economy. (Tr. at 18-19.) He therefore denied her application. (Tr. at 19.)

## II.

The first problem with the ALJ's decision is the credibility determination. In evaluating a claimant's testimony, the ALJ must first determine whether the claimant suffers from an impairment that could reasonably be expected to produce the symptoms alleged. If so, he must then determine the extent to which the alleged symptoms limit the claimant's ability to work. SSR 96-7p. In making this determination, the ALJ must consider the entire record and may not discredit the claimant's statements based solely on a lack of support in the medical evidence. See Moss, 555 F.3d at 561 ("[A]s the regulations state, an ALJ cannot disregard subjective complaints of disabling pain just because a determinable basis for pain of that intensity does not stand out in the medical record."); see also Parker, 597 F.3d at 922 ("As countless cases explain, the etiology of extreme pain often is unknown, and so one can't infer

from the inability of a person's doctors to determine what is causing her pain that she is faking it."); Carradine v. Barnhart, 360 F.3d 751, 753 (7th Cir. 2004) ("Medical science confirms that pain can be severe and disabling even in the absence of 'objective' medical findings, that is, test results that demonstrate a physical condition that normally causes pain of the severity claimed by the applicant."); SSR 96-7p ("Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence."). The ALJ must then provide "specific reasons" for the credibility determination, supported by the evidence and articulated in the decision. SSR 96-7p.

Here, the ALJ found that plaintiff suffered from impairments that could cause the symptoms alleged, but he then rejected her testimony as incredible based on its inconsistency with the medical evidence.[1] This was error. Further, the ALJ employed virtually the same

---

[1] It is true that the ALJ, later in his opinion, provided some additional reasons for the credibility determination, but none can withstand scrutiny. First, the ALJ noted that plaintiff worked only sporadically prior to the alleged disability onset, got fired from her last job, and hadn't recently looked for work. (Tr. at 17.) However, in a case such as this, where the claimant alleges disability based in large part on chronic conditions (rather than some traumatic injury), employment history may mean little absent further evaluation as to why the work record is limited. See Sarchet v. Chater, 78 F.3d 305, 308 (7th Cir. 1996) (rejecting the ALJ's reliance on poor work history where the claimant had long suffered from numerous impairments rendering her unemployable). The ALJ also ignored plaintiff's testimony that she was fired from her last job because she "was acting bipolar" (Tr. at 50), and that she had not applied for jobs because of her emotional problems (Tr. at 51). Second, the ALJ stated that plaintiff's "daily activities were not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (Tr. at 17.) However, the activities he listed – making meals, trying to do some chores around the house, attending church, going to a casino, and doing laundry

3

boilerplate language the Seventh Circuit has criticized as essentially meaningless. See Martinez, 2011 WL 148810, at *1 (noting that "'opinions of administrative law judges denying benefits routinely state (with some variations in wording) that although "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, . . . the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible," yet fail to indicate which statements are not credible and what exactly "not entirely" is meant to signify'") (quoting Spiva, 2010 WL 4923563, at *1); Parker, 597 F.3d at 921-22 (criticizing such language as "meaningless boilerplate").

The Commissioner argues that Parker's discussion on this subject is dicta, as the court went on to find other problems with the ALJ's credibility determination in that case. But the court of appeals has repeated Parker's condemnation of this boilerplate language in Martinez and Spiva, leaving no doubt that it finds such language insufficient. See also Punzio, 2011 WL

---

with some assistance – are hardly impressive in considering the ability to work full-time outside the home. See, e.g., Mendez v. Barnhart, 439 F.3d 360, 362 (7th Cir. 2006) (cautioning the SSA against placing undue weight on a claimant's household activities in assessing her ability to work as the pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment often differ dramatically between home and office or factory or other place of paid work); Carradine, 360 F.3d at 755 (reversing where the ALJ failed to "consider the difference between a person's being able to engage in sporadic physical activities and her being able to work eight hours a day five consecutive days of the week"); Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001) (reversing where the ALJ relied on fairly restricted activities and failed to explain how such activities were inconsistent with the claimant's complaints of pain); see also Moss, 555 F.3d at 562 ("An ALJ cannot disregard a claimant's limitations in performing household activities."). Finally, the ALJ noted plaintiff's ability to care for five children at home. (Tr. at 17.) However, the record shows that by the time of the hearing most of plaintiff's children were grown (Tr. at 42, noting their ages as 22, 21, 19, 17, 15, and 5), and the older children helped plaintiff care for the younger ones (Tr. at 85-86, 102-03.) The record also contains evidence that plaintiff gave one child up for adoption and lost her other children to child protective services in 2002. (Tr. at 288.) In any event, the Seventh Circuit has rejected the notion that a claimant's ability to care for her children means she can work outside the home. See Gentle v. Barnhart, 430 F.3d 865, 867 (7th Cir. 2005).

4

183976, at *5 ("Punzio raises a host of issues on appeal, among them that the ALJ gave no explanation whatsoever for finding her testimony not credible. On this point Punzio is correct; to read the ALJ's boilerplate credibility assessment is enough to know that it is inadequate and not supported by substantial evidence. That is reason enough for us to reverse the judgment[.]"). Therefore, the matter must be remanded for re-evaluation of plaintiff's credibility. On remand, the ALJ must comply with the requirements of SSR 96-7p and the Seventh Circuit cases cited above.

**III.**

The second problem is the ALJ's RFC determination. The ALJ found that plaintiff experienced moderate difficulties in concentration, persistence, and pace (Tr. at 14; see also Tr. at 291, 329, 469-70), yet he failed to properly account for those limitations in the RFC or in his questions to the vocational expert ("VE") (Tr. at 108-09). As the Seventh Circuit has held, limiting a claimant with such restrictions to "simple, routine" tasks, as the ALJ did here, will not ordinarily suffice. See O'Connor-Spinner v. Astrue, 627 F.3d at 619-20.

As the court explained in O'Connor-Spinner, the ALJ must generally orient the VE to the totality of the claimant's limitations, including any deficiencies of concentration, persistence, and pace. 627 F.3d at 619 (citing Stewart v. Astrue, 561 F.3d 679, 684 (7th Cir. 2009); Kasarsky v. Barnhart, 335 F.3d 539, 544 (7th Cir. 2003); Steele v. Barnhart, 290 F.3d 936, 942 (7th Cir. 2002)). While the ALJ need not invariably use the specific terminology "concentration, persistence, and pace" in his hypothetical questions to the VE, in the absence of this language the record must contain some other indication that the VE was aware of such limitations. For instance, the record may demonstrate that the VE independently reviewed the medical record or heard testimony directly addressing those limitations. Id. However, I see no such indication

5

in the present case.  Further, as in O'Connor-Spinner, the ALJ in this case posed a series of increasingly restrictive hypotheticals to the VE, which focused the VE's attention on the hypotheticals rather than the record, id., and he specifically prohibited plaintiff's counsel from adding to the hypotheticals a significant limitation in concentration, attention, and pace.  (Tr. at 112-13.)[2]

The O'Connor-Spinner court also noted that it had let stand an ALJ's hypothetical omitting the terms "concentration, persistence, and pace" when it was clear that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform, i.e. where the claimant's limitations were stress- or panic-related and the hypothetical restricted the claimant to low-stress work.  Id. (citing Arnold v. Barnhart, 473 F.3d 816 (7th Cir. 2007); Johansen v. Barnhart, 314 F.3d 283 (7th Cir. 2002)).  The ALJ did limit plaintiff to low stress work in the present case, but he made no finding that her problems with concentration were related to some stress or panic disorder, rather than her severe mental impairments of bipolar disorder and depression.  Nor does it appear that the ALJ included plaintiff's underlying conditions causing her difficulties with concentration, persistence, and pace in the hypothetical, which may have permitted the VE to consider such limitations.  See id. at 619-20 (citing Simila v. Astrue, 573 F.3d 503, 522 (7th Cir. 2009)).  Therefore, the RFC determination was deficient.

The Commissioner's argument that Seventh Circuit case-law permits the type of RFC used by the ALJ in this case closely mirrors that rejected by the court in O'Connor-Spinner.

---

[2]After the hearing, plaintiff's counsel sent the ALJ a letter-brief further discussing her limitations in concentration, interaction with others, and handling work stress, with specific citations to the evidence.  (Tr. at 213-14.)  The ALJ failed to account for this evidence and these putative limitations.

6

See id. at 620-21. (Indeed, the Commissioner cites the district court's decision, reversed on appeal, in O'Connor-Spinner.) None of the exceptions to the general rule set forth in O'Connor-Spinner appear to apply, so the matter must be remanded for determination of RFC under O'Connor-Spinner and the standards articulated therein.[3]

**IV.**

**THEREFORE, IT IS ORDERED** that the ALJ's decision is **REVERSED**, and the matter is **REMANDED** for further proceedings consistent with this decision. The clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 27th day of January, 2011.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge

---

[3] In the Commissioner's defense, several of the Seventh Circuit cases discussed above came down after the Commissioner filed his brief in this case.